ALLSTATE INSURANCE CO., Plaintiff,

v.

Tung S. GIP, et al., Defendants.

No. C 91–20265 EAI.

United States District Court,
N.D. California.

Feb. 25, 1992.

William E. Pierson, Jr., Cozen & O'Connor, Seattle, Wash.

Ronald J. Palmeri, Fletcher, Harms & Palmeri, Oakland, Cal., for plaintiff.

Robert M. Bustamante, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, San Jose, Cal., for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

INFANTE, United States Magistrate Judge.

### I. Introduction

This is an action wherein plaintiff Allstate Insurance Company ("Allstate") seeks subrogation for monies paid on a fire insurance policy. Allstate alleges that the defendants negligently failed to operate and maintain the premises which they leased from Allstate's insured, Mr. George Ku. Presently before the court is defendants' motion for summary judgment.[1] Defendants' motion is founded on the assertion that Mr. Ku and the defendants were implied-in-law co-insureds, and therefore Allstate has no right of subrogation against them. Jurisdiction is based on diversity of citizenship and the parties agree that California law applies.

On or about November 22, 1982, Ms. Ruth Teasdel entered into a lease agreement with defendants Tung S. Gip, Andy Tan Nang Diep and Julie Nu Van Diep ("defendants"). Pursuant to the lease agreement the defendants leased Unit C of a commercial building owned by Ms. Teasdel. On or about June 6, 1987 the lease was modified to substitute Mr. George Ku as the landlord/lessor. The lease was further modified to extend its term, and increase the amount of rental payments and

---

1. The parties have consented that all proceedings, including trial, in the above entitled case may be heard and finally adjudicated by the assigned magistrate judge, pursuant to Rule 73, F.R.Civ.P. and 28 U.S.C. Section 636(c).

security deposit. However, in all other respects the lease agreement continued in full force and effect.

The lease agreement provided, in pertinent part:

*Paragraph 7B:* In addition to the Minimum Rent provided in Article 4 hereinabove, and commencing at the same time as any rental commences under this Lease, Tenant shall pay to Landlord the following items, herein called Adjustments: (a) all real estate taxes and insurance premiums on the premises, including land, building and improvements thereon.... Said insurance shall include all insurance premiums for fire, extended coverage, liability, and any other insurance that Landlord deems necessary on the Premises. Said taxes and insurance premiums for purpose of this provision shall be reasonably apportioned in accordance with the total floor area of the Premises as it relates to the total floor area of the Shopping Center ... (provided however, that if any tenants in said building or buildings ... carry their own insurance, as may be provided in their leases, their square footage shall not be deemed a part of the floor area).

*Paragraph 11A:* ... Tenant shall, upon the expiration or sooner termination of this lease hereof, surrender the premises to the Landlord in good condition, broom clean, ordinary wear and tear damage from causes beyond the reasonable control of Tenant excepted....

*Paragraph 14:* HOLD HARMLESS. Tenant shall indemnify and hold harmless Landlord against and from any and all claims arising from Tenant's use of the premises or from the conduct of its business or from any activity, work, or other things done, permitted or suffered by the Tenant in or about the Premises, and shall further indemnify and hold harmless Landlord against all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this lease, or arising from any act or negligence of the Tenant, or any officer, agent, employee, guest, or invitee of tenant, and from all costs, attorney's fees and liabilities incurred in or about the defense of any such claim, ... Tenant, as a material part of the consideration to Landlord, hereby assumes all risk of damage to property or injury to persons in, upon or about the premises, from any cause other than Landlord's negligence; and Tenant hereby waives all claims in respect thereof against Landlord.

. . . . .

*Paragraph 16:* Tenant shall, at Tenant's expense, obtain and keep in force during the term of this lease a policy of comprehensive public liability insurance insuring Landlord and Tenant against any liability arising out of the ownership, use, occupancy or maintenance of the premises and all areas appurtenant therein. Such insurance shall be in the amount of not less than $300,000.00 for injury or death of one person in any one accident or occurrence and in the amount of not less than $500,000.00 for injury or death of more than one person in any one accident or occurrence. Such insurance shall further insure Landlord and Tenant against liability for property damage of at least $50,000.... If Tenant shall fail to procure and maintain said insurance, Landlord may, but shall not be required to, procure and maintain same, but at the expense of Tenant.... All such policies shall be written as primary policies not contributing with and not in excess of coverage which Landlord may carry.

Pursuant to Paragraph 16 of the lease, defendants obtained a comprehensive general liability policy ("CGL") in 1984 from the Farmers Insurance Group. As part of the comprehensive package, the policy also included special additional excess coverage for fire legal liability in the amount of $75,000.

After the lease was modified to substitute Mr. Ku as lessor, he obtained a property insurance policy from plaintiff Allstate. On September 1, 1989 Mr. Ku sent the defendants a bill for $608.67 as their pro rata share of the premium for this policy pursuant to paragraph 7B of the lease. On

or about October 2, 1989, the defendants made the requested payment.

Thereafter, on or about December 26, 1989, there was a fire at the leased premises.[2] As a result of the fire, Allstate paid $249,567.75 to Mr. Ku to repair the damage to the building. This money was paid under the policy to which defendants had contributed premium payments.

Defendants assert that the Allstate policy issued to Mr. Ku was taken out for the mutual benefit of both the lessor and the lessees. This being so, the defendants contend that they are the implied-in-law co-insureds under the Allstate policy, and therefore Allstate has no subrogation rights against them.

Allstate asserts that defendants were required to indemnify the landlord for damages caused by negligence in the use or occupancy of Unit C. Allstate further contends that the parties intended that the defendants' insurance policy would be primary, and any policy procured by Mr. Ku would be excess. Therefore, Allstate contends that it possesses a right of reimbursement, under equitable principles of subrogation, because it paid an obligation that the primary insurer was obligated to pay.

## II. Summary Judgment Standard

Rule 56(c), F.R.Civ.P., provides that summary judgment shall be entered against the non-moving party if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a proper motion is made, entry of summary judgment is mandated where the responding party fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S.

317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The test used to determine whether summary judgment should be granted "mirrors" that applied to a motion for a directed verdict.

[T]he trial judge must direct the verdict if, under governing law, there can be but one reasonable conclusion as to verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 [106 S.Ct. 2505, 2511, 91 L.Ed.2d 202] (1986):

Accordingly, in reversing the denial of summary judgment, the Supreme Court ruled in *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986):

[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' under Rule 56(c). *Id.* at 587 [106 S.Ct. at 1356].

To prevail on their motion, defendants must show that the record, taken as a whole, could not lead a rational trier of fact to find that Allstate has a right to subrogation in this instance. Specifically, defendants must show that a rational fact finder could only find that the parties intended the Allstate policy procured by Mr. Ku to be for the benefit of both the landlord and the tenants. *See, Liberty Mutual Fire Insurance Co. v. Auto Springs Supply Co.,* 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (1976).

## III. Discussion

■ An excess insurer possesses a right of reimbursement under equitable principles of subrogation, when it pays an obligation that a primary insurer was obligated to pay. *State Farm Fire & Casualty Co. v. Cooperative of American Physicians, Inc.,* 163 Cal.App.3d 199, 204–205, 209 Cal.Rptr. 251, 253–254 (1984). A subrogation as applied to an insurer is its right to be put in the position of its insured against third parties legally responsible to its insured for the loss which the insurer

---

**2.** Apparently, the cause of the fire, and specifically whether it was caused by defendants negligence, is still in dispute.

has both insured and paid. *Sacramento–Yolo Port District v. Cargill of California, Inc.*, 4 Cal.App.3d 1004, 1010, 84 Cal. Rptr. 822 (1970). However, a lessor's insurer has no subrogation right against a lessee where the lessor and lessee intended the insurer's policy to be for their mutual benefit. *Liberty Mutual Fire Insurance Co. v. Auto Springs Supply Co.*, 59 Cal. App.3d 860, 131 Cal.Rptr. 211 (1976). The parties agree that the sole issue presented by this motion is the intent of the lessor and the lessees regarding the purchase of the Allstate policy. The question of the their intent is a question of fact, and is material to the issue of whether or not Allstate has a right of subrogation against defendants. *Aetna Insurance Co. v. Craftwall of Idaho, Inc.*, 757 F.2d 1030, 1031 (9th Cir.1985).

In *Liberty Mutual, supra,* the California Court of Appeal for the Second District upheld the trial court judgment in favor of the lessee. The appellate court in *Liberty Mutual* accepted the trial courts factual finding on the issue of the intent of the parties. The trial court found that the lessor and lessee intended and understood that neither the lessee nor its employees "would have any liability for fire loss to the building and that the just-mentioned persons and entities would look solely to the proceeds of Liberty's policies to pay for any such loss." *Liberty Mutual,* 59 Cal. App.3d at 864, 131 Cal.Rptr. 211. The trial court then concluded as a matter of law that Liberty had no right of subrogation against the lessee. *Id.* at 864, 131 Cal. Rptr. 211.

In *Parsons Manufacturing v. Superior Court (General Accident Fire & Life Assurance Corporation, Ltd., real party in interest),* 156 Cal.App.3d 1151, 203 Cal. Rptr. 419 (1984) the California Court of Appeals for the First District reversed the trial court's denial of the lessee's motion for summary judgment. The appellate court found that the lease agreement alone was a sufficient showing of intent to support the lessee's motion for summary judgment, because it was "rife with hints that lessor would procure insurance on the premises." [3] *Id.* at 1163–1164, 203 Cal. Rptr. 419. The appellate court also found that the lessor had failed to present evidence to rebut the inference from the lease language that the lessor would procure insurance for the benefit of both lessor and lessee. In arriving at that conclusion the court stated:

> Real party presented no evidence showing that the parties intended that the lessee be responsible for its own negligence or expected the lessee to insure the premises for fire damage. Real party relied below upon the absence of an express waiver of subrogation, not upon an intention of the parties contrary to the implications of the lease. *Id.* at 1164, 203 Cal.Rptr. 419.

Thus, the *Parsons* court found that the showing made by the lessor was insufficient to establish a triable issue of fact on the question of intent.

In *Aetna Insurance Co. v. Craftwall of Idaho, Inc.,* 757 F.2d 1030 (9th Cir.1985), on appeal from a grant of summary judgment of the U.S. District Court of the District of Idaho, the Ninth Circuit held that the facts as developed below, were insufficient to support a determination of intent in favor of either party. *Id.* at 1032. The Court of Appeals reversed and remanded for trial so that the district court could develop additional evidence to ascertain the parties' intent. *Id.* at 1032.

■ As evidence in support of their motion defendants offer the written lease agreement, the CGL policy procured by defendants, a declaration of the Underwriting Specialist for the Farmers Insurance Group, the Allstate policy procured by Mr.

---

**3.** In discussing the terms of the lease the court also stated: "... [P]aragraph 5 excepted 'damage by fire' from the lessee's obligation to return the premises in good condition. Paragraph 12 required the lessor to rebuild after fire damage under certain conditions. Paragraph 32 prevented the lessee from creating an unusual fire hazard, and paragraph 36 required the lessee to secure public liability, but made no mention of fire insurance on the premises." *Parsons,* at 1163, 203 Cal.Rptr. 419. The court did not specifically state what lease provisions indicated that lessor would procure insurance on the premises.

Ku and the declarations of the lessor and the lessees.[4] Defendants also offer a copy of the bill submitted to the defendants by Mr. Ku requesting payment for their share of the Allstate premium, and a copy of the check sent to Mr. Ku for payment of the same.

As evidence in opposition to the motion, Allstate offers a declaration of an Allstate employee, attesting to the facts that (1) Allstate paid out on the policy issued to Mr. Ku and (2) Allstate did not waive its subrogation rights, defendants' response to plaintiff's request for admissions, incorporating therein the written lease agreement, and the Allstate policy. Allstate also offers the declaration of a fire investigator and a portion of the National Fire Protection Associations Standards, both of which are irrelevant to this motion.

Although the defendants state in their declarations that they assumed that the Allstate policy was for their benefit as well as Mr. Ku's, this testimony should be viewed cautiously in light of the express provisions of paragraphs 11A, 14 and 16 of the lease. Paragraph 11A of the lease agreement required lessees to return the property in good condition, normal wear and tear excepted. Paragraph 14 required lessees to indemnify the lessor against any and all claims arising from lessees' use of the property. Paragraph 16 required defendants to procure a comprehensive public liability policy ("CPL") which (1) insured *landlord and tenant* against any liability arising out of the ownership, use, occupancy, or maintenance of the premises and (2) was written as primary insurance, not just in excess of a policy procured by lessor. Paragraph 16 also permitted the lessor to procure the CPL at lessees' expense if lessees failed to do so.

**4.** Allstate contends that the declarations of lessees are inadmissible parol evidence, and therefore should not be considered by the court on this motion for summary judgment. While evidence of prior agreements or contemporaneous oral agreements ("extrinsic evidence") is inadmissible to contradict the terms of a complete

Furthermore, Mr. Ku's declaration states that he procured the Allstate policy to protect himself and the building structure. Mr. Ku does not state that he intended the policy to benefit the defendants.

## IV. Conclusion

Viewing all inferences in the light most favorable to Allstate, the non-moving party on this motion for summary judgment, [*T.W. Electrical Service Inc. v. Pacific Electric Contractors Association*, 809 F.2d 626, 630–631 (9th Cir.1987) ] the court finds that the evidence presented in opposition to defendants' motion for summary judgment establishes that there is a genuine dispute of fact on the issue of whether the lessor and the lessees intended the Allstate policy to be for the mutual benefit of the parties. This fact is material to a determination of whether Allstate has a right of subrogation against defendants, and as such is properly left to the trier of fact. *Liberty Mutual Fire Insurance Co. v. Auto Springs Supply Co.*, 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (1976); *Aetna Insurance Co. v. Craftwall of Idaho, Inc.*, 757 F.2d 1030 (9th Cir.1985). Accordingly, defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

and final expression of the parties' agreement, it is not inadmissible to explain an ambiguity which appears on the face of the agreement. California Code of Civil Procedure Sections 1856(a) and (g). The lease provisions set forth above create a facial ambiguity.